Should we follow Hines? Michael, you should follow the statute, Your Honor. But that wasn't my question. Should we follow Hines? Hines specifically found that the statute could be interpreted to indicate a fellow who was mandated to have a 10-hour day that would be his work week. In this instance, since the time of Hines, the Interstate Scaffolding Act, the Supreme Court has indicated that the industrial commission is purely a creature of statute and has no powers other than what the statute provides. I believe the statute and the legislature specifically use the terms excluding overtime and wellness. The legislature did not take any steps to modify those words that it would be proper to follow the plain and ordinary meaning of the statute. What's the definition of the word overtime? The definition of the word overtime according to the union contract is anything over 40 hours. That's what the farm is worked under. And Hines, in all cases, has applied a lot of inclusion of overtime. They have relied on the fact that overtime is not included or defined in the Workers' Compensation Act itself. In the Wage Payment Act, section 105 of the statute, overtime is defined as anything over 40 hours. And the parties in this instance define overtime as anything over 40 hours. So by the agreement of the parties, and they've worked with, the definition of overtime is anything over 40 hours. Was he required to work overtime? That's a dispute. Mr. Pejora, we had the first day of trial, the petitioner's counsel asked for a continuance because he said it was incumbent upon him to call Mr. Pejora as a subpoenaed witness, from the respondent to the petitioner's actual supervisor, in order to then testify that the man was compelled to work overtime. Because no other instance was their testimony that someone had been punished or given points for not working overtime. And Mr. Pejora, at page 307 of the record and 304 of the record, indicated that as long as the person gave notice within 24 hours, he would be willing to reassign them. Mr. Pejora also used qualifying words in terms of having all hands on deck, and that's something that they would try to do. There was no indication, and what the plaintiff had thought was a key element to his case, that the man had been compelled to work the overtime as a secure address for the point system, that that was never exercised. We'll break it down. He's scheduled to work this overtime. You're not disputing that. You're saying, well, because he can opt out of it, therefore, it shouldn't be calculated. I'm saying something more basic than that. And that would be what? The statute says, excluding overtime. And we went to any layman on the street, and what the statute said, excluding overtime. And we said, and what that applies to, and we said overtime is excluded under certain circumstances, that if you bring the practice of law to the provision, it would be lowering the practice of law. So plain and ordinary means of that is aware, is familiar to people, and we can't magically change that word, and this application of those words. So then you're exalting form over substance. So if he has to require a certain number of hours a week, it should be cut off because you don't like the word overtime. No, he negotiates with his collective bargaining unit, and overtime is defined as 40 hours. His collective bargaining unit chooses to use that rather than have a number measure as to what overtime is. And there's a direct contractual relationship between him and the employer, his collective bargaining unit and the employer, and they have defined what overtime is, and the statute defines what overtime is. And we are not at liberty in order to give it other definitions. The statute doesn't define what overtime is. Since it specifically excludes it. The statute does not define the word overtime, does it? The Workers' Compensation Act does not. Okay. The Labor Employment Act does. So? And his employment contract does. Well, wait a minute. Can't two people define the same word differently if they choose? No. I think the purpose of the law is to have some sort of certainty and have words have meaning in them for it. Well, then you should have had the legislature pass a bill that said anything over 40 hours is excluded. You made it, like, fee-releasing. The legislature had not chosen to amend the Workers' Compensation Act. They said specifically excluding overtime. The language in his union contract said overtime is anything over 40 hours. In Section 105B21-5 of the Employment Code indicates overtime as anything over 40 hours. Isn't there a presumption, since the legislature has not amended the act since Heinz Lumber in 1990, that they've accepted the court's definition? It could be an equal presumption they accepted since their support under Betzworth-Dowd had specifically excluded overtime, that they saw that as the court's interpretation of the clear reading of the act that overtime is excluded. So you're saying the parties can't define overtime between themselves, right? That's what you're saying? I believe the parties could define overtime and the parties could define what a week is. In this instance, they did not do that. They limited it to a 40-hour week. If under, and as was discussed in the Heinz Lumber case, the union contracts vary, if under a masonry contract they define what a work week is as a certain number of hours after a poor starts, and that doesn't include, doesn't become overtime, and that's a regular work week, then that's fine. In this union contract, as applied to Section 10 of the Workers' Compensation Act, anything over 40 hours is overtime. And the decision is... So the parties define a statutory term? They get to do that? I think it would be, if the court, I think the court should first look, the use of the word overtime and other statutes, I think that would be reasonable, and the first step for a statutory construction, and I think you could rely on the Labor and Employment Act to define overtime as anything over 40 hours. So I take it you don't like Edward Don? Excuse me? I take it you don't like Edward Don very much? Edward Don had indicated that overtime was specifically... Well, why? Because it wasn't a condition of his employment and because he didn't consistently work it, and that's why Edward Don said that overtime would not be included. Edward Don didn't deviate from Hines. It also specifically cited the fact that the statute, Edward Don did specifically cite the statute. I think I know what Edward Don said because I wrote it. Okay, but it did say in your decision you indicated that the statute didn't specifically exclude overtime. It did exclude overtime, but we didn't deviate from Hines, and Hines says that if you regularly work hours over and above 40 every week, that they are not considered overtime within the meaning of the act. Edward Don specifically indicated that it doesn't matter if we schedule 10 hours or 5 hours a day, that that did become his work week. They defined his work week as 10 hours a day, so that was not overtime. In this instance, they defined his work week as... So we're back to the same question. You suggest that the parties can define a statutory term. Which is entirely consistent with Edward Hines, and what the court said of Edward Hines, that due to the nature of varying employment and labor contracts, that the work week can be different from one worker to the next. In this instance, it was a 40-hour week according to DOD contracts. Counsel, please. Good morning. I'm here to speak to the court on behalf of the Obama Court of Arbitration, I believe. There are actually two issues before you in the briefs. We believe that both subjects of the matter, so it's definitely due. And we believe the Anamnes Commission was correct in implying that Edward Hines, was holding a two-hour work week. That in fact is a worker who averages more than 40 hours a week is entitled to overtime hours in the calculation of their average work week, relative to the straight-time rate. The definition of overtime time in the contract by this court has stood for over 20 years now since they decided on Hines' case. So you're going to tell us that you think we ought to just follow Edward Hines and DOM, and that's the end of it? And they're going to. They were all manifest. But the question is, what's the definition of overtime? The court said it is regular mandatory hours. If you look at the schedule, the supervisor came out every Thursday, and usually, not always, because it's a steel mill and production failure, but almost always, every other week, there was a call-off shift. It was mandatory. Yes, you could call off a regular shift, too. It was a regular scheduled shift. What about his argument, though, that the union itself and the bargaining unit and the employer agreed on the definition of what's overtime? Well, they did, because if you don't, then you're in violation of the Fair Labor Standards Act. So it's not so simple to come here and say workers' comp controls the relationship. So a 40-hour week is pretty basic across the country, but if you get into overtime, you don't get overtime. If you did bargaining, otherwise, I think you'd all be out of office pretty quickly. At the same time, we have a definition of overtime. So the real response, I think, to that is the non-mandatory overtime that we didn't ask for. It was over 300 hours that he used his seniority to volunteer for that we excluded under the same holding that we're applying to show that the mandatory regular scheduled overtime is part of the session definition. And so when your employer schedules mandatory overtime, what's going to happen if you refuse to work overtime? Well, if you don't follow the rules, you'll get what they call an occurrence. And the more occurrences you get, the less determination. You'll be out of a job, ultimately. Regular or mandatory overtime. If you stop coming in, and the other reason that supervisor was called was to testify, and what's a valid reason? He had to have a reason. It wasn't optional. When he mentioned all hands on deck, it's a steel mill. They shut down production. He's a maintenance man. They wanted everybody in there to do the repair. They called it an outage or a reload. So that they could be up and running the next day. That's why it was mandatory. They wanted to stop production and have guys on vacation. They discouraged vacation. Often didn't allow it. So that's why it's part of the regular working. And he testified also. I tried to include every other person. That's what the supervisor testified. I don't think you can get more regular employees than you have in the plan. About when you're going to schedule people to work extra than they normally should. If an employee works 10 hours a day for 4 days a week, does he have to be paid overtime for the 2 hours a day that he works in excess of 8? You know, I don't know for certain how that's interpreted. Under Section 10, I think he has a 40 hour opportunity to wage. No, I understand under Section 10. I'm asking under the Fair Labor Standards Act. Can I get back to you? I know the answer to it, so it's okay. What was actually concluded? I missed the question. What was the question? He was asking me. My question was if an employee works 4 10-hour days in a work week, must he be paid overtime for the 2 hours in excess of 8 that he works on each of those 4 days under the Fair Labor Standards Act? I'm not sure. You'll get back to us on that. For the facts before us, it's pretty clear that he's going to get a straight time pay. At a minimum. All right. I'm going to stop the sketch. Why is the Edward Hines case so on point? Not only is the first case on point, but the actual proofs in that case were similar to this. The other case is mentioned. It seems to me I'm reading the history. They were all questions of fact. They were all manifest way questions. Did the commission properly apply the definition to the facts below? Here we have an anonymous commission saying, yes, these were regular. These were mandatory. There's plenty of evidence in the record to support that. It's nowhere close to manifesting. If a man's hired to work 5 10-hour days each week, he has to get overtime for 10 hours, doesn't he? In the Hines case? No. He has to get overtime for 10 hours, doesn't he, under the Fair Labor Standards Act? As a wage matter, yes. And if he doesn't accept the overtime, if he rejects it, it has to be paid to the United States Treasury, doesn't it? I believe that's true. I think it is, too. Did you not know you needed to be an expert on the Fair Labor Standards Act? Well, I wish I would have been in the brief, because I would have been honored. I want to spend a few seconds, if I can, on the bonus issue that wasn't addressed in our argument, which is in the briefs. Truly, I thought about this over the weekend. I thought Shakespeare's book arose by any other name, and I wanted to bring it to your attention. Let's call this the production-based wage problem and have it say exactly the same thing as the production-based bonus problem. This goes back to the earlier argument about if someone says it's overtime, well, we just all know what that means. That it's excluded. That's not what this is. This court can see past the label. And it has done so many times in independent counseling applications. You can't ask a party to label their plan and then say they've given statutory instruction. It fabricates our whole system. What we have here is a production-based wage problem. It came from a national labor agreement that allowed the Senate to pay its own employees. And when it got bargained here, it's called a wage problem. Well, who doesn't want to get a bonus? That's the motivating thing. It's a contract. It's enforceable. It's based on amendable for this. There's nothing discretionary about it. It's paid every two weeks. It's doubled to the income. It's not an option for the company. It's not a fortuity. And looking at some of the case law on quote-unquote bonus being excluded, there's not a lot of it. But the commission has always held that consideration for work reform is not a bonus. And in this case, we see that. Through the entire evidence in the record and exhibits in support of how these so-called supplemental wages were calculated. Certainly, you had to work. Certainly, you had to be part of a team that had quality steel produced. And there was a component to safety as well. Everyone in the plant was subject to a calculation based on their work performance. And they got additional wages based on that production. And it was good for the shareholders. It was good for the employees. It was good for the customers. And it worked. And it was part of the wage cap. So we can call it other things. We can call it incentive pay. We can call it supplemental wages. We can call it production wages. It's not a bonus. What does the commission say? Is there anything that's not a bonus under the commission's definition? Well, there's a leading case for a — it's called Lefkowitz. He was the manager of a restaurant. And his meals and so forth and so on were excluded as a bonus. And the way the evidence was presented, there was no obligation. He had no — no one would force the right to get his free meal on board. That's sort of a leading appellate court case. The commission has excluded some per diems from time to time. It depends, of course, on the facts. And, like the definition of overtime being applied, here the commission looked beyond the label and said, well, this is wages. We're going to interpret it as wages and we're going to include it as such. But they defined it as what? Compensation for work performance. So, in sum, we'd ask you to affirm the unanimous submission. So Lefkowitz said a free meal was not compensation? Correct. Because there was no way to force it. It was a gratuitous — it was a true gift in that set of facts, based on the way the evidence was presented. We'd ask you to affirm the commission on all counts. Counsel, can I start off by asking you a question? You alluded to in your argument earlier the importance of having a right-line ruling definition in the real world that everybody understands. So we're talking about the real world. You're representing your company. As we discussed with you earlier, don't you want the employees to, when they're scheduled for this overtime, to go along with that? Or do you want them opting out of this and causing chaos in the steel mill? Can you have it both ways? Well, in terms of having a court case, there's no indication whatsoever that the court has whatever brought in. There aren't any points. There haven't been points. In terms of the real world, when we all head home this afternoon, we can listen to Fox Radio and telephone. In the afternoon, he does imitation. He had interviewed the people on the Maxim case, and he had this interview with Mr. Peterson from JL. And when he does imitation on attorneys, he uses an easily New York accent. He said, well, Your Honor, well, my client said he killed your guy. He didn't mean to kill your guy. In terms of the practice of law, Mr. McHugh, if we say that overtime, excluding over-medical leave, you can do overtime, the legislature didn't indicate mandatory overtime, regularly worked overtime, I think we have an obligation to enforce the statute. And that's what the Supreme Court said in the interstate scaffolding, that the commission is only going to be a product of its statute, and they can't begin to give and choose what bonuses to include. So you want your workers to know, hey, this is well and good, but if you have a problem and you have a claim, we're not going to consider this to be overtime anymore. Is that the message you want to send to this court? If compensation is the tail that's going to wag the dog, then it's something that has been negotiated. But workers' compensation, in consideration of workers' compensation, should be the tail that wags the dog in the re-operation of every business. Unless you want to look at things from the real-world standpoint, as you alluded to. And I would really like to have the practice held in some esteem where we don't assume that you can say something that doesn't have to mean what it says. Is this not really an indemnification problem, unless this is a self-introvert, as to how you set the rates and coverage for indemnification based on wages paid? Mayor, this is all their money. This is 100 percent of all that staff's losses and claims paid. In terms of wage and hours issues, the federal statutes do track, and the Illinois statutes do track the Fair Labor Practices Act. The 820 ILCS 154A provides that you do not have to exceed 40 hours of labor when you're overtime. That's what the Illinois statute says. Thank you, Counsel. The court will take the matter under advisement for disposition. Clerk, please call the next case.